LINCOLN W. TIBBETTS *vs.* DEERING LOAN & BUILDING ASSOCIATION.

Cumberland.    Opinion November 5, 1908.

*Loan and Building Associations.    Borrowing Members.    Mortgage Contracts.*
*Interest.    Premiums.    Dues.    Fines.    Shares.    "Loan."    "Lent."*
*Lapse.    Forfeiture.    Accounting.    Revised Statutes,*
*chapter 48, sections 60, 63, 64, 65, 66, 68.*

1. A borrowing member of a loan and building association has assumed more obligations to the association than those of a mere borrower to a lender of money. He is bound to make such payments of dues, interest and fines as are imposed by the statutes and by-laws and his contract made in pursuance thereof.

2. If such member contracts with the association for a specific loan and executes a note and mortgage therefor in which he stipulates in accordance with the statutes and by-laws, to pay specific sums as interest, premiums and fines at specific times, he must make such payments and does not perform his obligations by merely paying interest and premiums on the different installments advanced him on the loan from the time he received them.

3. The fact that the association does not advance to the borrowing member the whole amount of the agreed loan at the time of making the contract therefor, but only advances it in installments from time to time as the security justifies in the opinion of the directors, does not excuse the borrowing member from paying interest and premiums on the whole loan according to the terms of the contract; nor does the further fact that the association did not set apart as a special fund the amount of the loan.

4. The words "loan" and "lent" in sections 64 and 65 of Revised Statutes, chapter 48, relative to loan and building associations, do not mean the sum or sums of money actually drawn out, but mean the whole sum contracted for.

5. When a borrowing member increases his loan and gives a new note and mortgage of like tenor as the first for the whole amount thus increased, the first note and mortgage being cancelled, the new note and mortgage become security for the payment of all previous overdue installments of dues, interest and premiums.

6. In case of such increase of the loan and new note and mortgage being given for the whole loan thus increased, the limitation in section 68, Revised Statutes, chapter 48 that "no fines shall be charged after six

months from the first lapse," begins to run from the first lapse under the new note and mortgage.

7.   When the shares of a borrowing member pledged for a loan have been duly forfeited to the association, then by section 69, Revised Statutes, chapter 48, an account is to be stated in which the borrowing member is to be debited with arrears of premiums, interest and fines to date, and credited with the withdrawal value of his shares at that date.   The balance against the borrowing member constitutes a new principal which bears interest from that date to the day of payment.   This balance and interest thereon must also be paid in order to redeem the mortgage given for the loan.

On exceptions by plaintiff and also by defendant.   Plaintiff's exceptions overruled.   Defendant's exceptions sustained.

Action of assumpsit brought to recover the sum of $37.33 alleged to have been overpaid by the plaintiff to the defendant association in settlement of a loan made to the plaintiff by the defendant association and which said loan was secured by a mortgage given by the plaintiff to the defendant association.   Plea, the general issue, with a brief statement which in substance states that the defendant association received from the plaintiff in settlement of the loan $3241.87 and that afterwards a clerical error was discovered whereby it appeared that the plaintiff had paid $13.00 too much in settlement of the loan and that thereupon the defendant association repaid to the plaintiff said sum of $13.00.

The action was commenced in the Municipal Court, Portland, Cumberland County, and on appeal by plaintiff was transferred to the Superior Court in said county.   An agreed statement of facts was then filed and the case was heard by the Justice of said Superior Court without a jury.   Both plaintiff and defendant association reserved the right to take exceptions.   When the Justice rendered his decision the plaintiff and the defendant each took exceptions to certain rulings therein contained.

The material facts are stated in the opinion.

The note dated March 1st, 1906, given by the plaintiff to the defendant association, and the condition in the mortgage of same date given by the plaintiff to the defendant association to secure said note, and article 10 of the by-laws of the defendant association are as follows :

## NOTE.

"$2000.       .        Portland, Me., March 1st, 1906.

"Having this day pledged and transferred to the Deering Loan and Building Association, a Corporation duly established by law, and having its office and principal place of business at Portland in the County of Cumberland and State of Maine ten (10) shares of its Capital Stock, as collateral security for payment of the sums herein mentioned, upon which shares the sum of two thousand (2000) dollars has been advanced to me by said Corporation, for value received I, Lincoln W. Tibbetts of Portland promise to pay to said corporation, or order, the sum of 2000 and 00-100 dollars in monthly installments of ten (10) dollars with interest at the rate of six per cent per annum payable in monthly installments of ten (10) dollars, and premiums at the rate of three (3) Dollars per month; amounting to twenty-three (23) Dollars payable in advance at the stated meetings of said corporation on the first Saturday of each month hereafter, being the amount of the monthly dues on said ten (10) Shares, and of the monthly interest and premiums upon said loan or advance of 2000 Dollars, for which said shares are pledged and this note and the accompanying mortgage given, and also all fines chargeable by the By-laws of said Corporation upon arrears of such payments, until said Shares shall reach the ultimate value of Two Hundred Dollars each, when said Shares shall be applied in payment of this loan as provided by law and said Shares cancelled. Or if said Lincoln W. Tibbetts shall desire to otherwise sooner pay to said Corporation, or order, said sum of two thousand (2000) Dollars, together with the said interest, premiums and fines as aforesaid, to the time of such payment, the value of said Shares at the time of such payment may be applied on said loan in part payment, as provided by law, and said Shares cancelled. In case of failure to pay the aforesaid monthly installments as above stipulated, or either of them, or said monthly dues, interest, premiums, fines, or any part thereof, for a space of six months after the same shall become due and payable in accordance with the terms of this note and the Rules and By-Laws of said Association, then the whole sum of the

principal then remaining, and the interest, premiums, fines then chargeable under the terms of this note and said Rules and By-laws of said Association, shall immediately become due and payable and be enforced against the several securities given for this loan, as provided by law and the terms of the above mentioned mortgage.

LINCOLN W. TIBBETTS."

"Witness:

"SCOTT WILSON.

### MORTGAGE CONDITION.

"Provided nevertheless, that if the said Lincoln W. Tibbetts, his heirs, executors, or administrators shall well and truly pay to the said Association, its successors or assigns the sum of two thousand (2000) dollars, in monthly installments of ten (10) dollars, with interest at the rate of six per cent per annum, payable in monthly installments of ten dollars, and premiums at the rate of three (3) dollars per month, amounting to twenty-three (23) dollars, payable in advance at the stated meetings of said Association on the first Saturday of each month hereafter, according to the tenor of a certain note of even date herewith given by the said Lincoln W. Tibbetts to the said Association to pay the said two thousand (2000) dollars, with interest and premiums as aforesaid, and shall well and truly pay the monthly installments of twenty-three (23) dollars each month on said ten (10) shares of the 26th series of the stock of the said Association, and shall pay, when due, all fines assessed according to the By-laws of the Association and the laws of the State, until said shares shall reach the ultimate value of two hundred dollars each, or shall otherwise sooner pay to said Association said sum of two thousand (2000) dollars together with the interest, premiums and fines aforesaid to the time of such payment, and also shall pay all taxes, assessments and insurance on the above described property, and shall well and truly keep all covenants above named, then this obligation as also one certain promissory note, above described, shall both become null and void, otherwise shall remain in full force."

### By-Laws, Article X.

"In default of the monthly payment of dues, interest, or premiums, the shareholder shall be subject to a fine of two cents per month upon each and every dollar, or fractional part thereof not less than fifty cents, in arrears."

*Sherman I. Gould*, for plaintiff.

*Scott Wilson*, for defendant.

Sitting: Emery, C. J., Whitehouse, Savage, Peabody, Spear, Bird, JJ.

Emery, C. J.   The case is this:—The Deering Loan and Building Association, the defendant, was incorporated under R. S., ch. 48, secs. 54 to 78 inclusive.   As a contribution to its capital each subscriber for shares was bound by statute to pay in each month one dollar on each share held by him until the share reached the ultimate value of $200, or was withdrawn, cancelled or forfeited. (Sec. 60.)   After reservation of enough to meet expenses and specified contingencies, the rest of the moneys of the association was to be loaned to the holders of shares at a rate of monthly premiums to be fixed by the directors not to exceed forty cents a share.   The loan to any member or shareholder was limited to $200 for each share held by him, but for such loan he was required to give, in addition to pledging his shares, a real estate mortgage to the satisfaction of the directors.   (Sec. 63, sec. 66.)   In addition to the monthly dues upon his shares and the monthly premiums upon his loan, the borrowing member was further bound to pay a fixed sum monthly as interest on his loan until his shares reached the ultimate value of $200 each, or the loan was repaid.   (Sec. 65.)   In default of payment of these monthly dues, premiums and interest, the borrowing member was bound to pay a fine of two cents a month for each dollar so in arrears.   (Sec. 68 of statute and art. 10 of by-laws.)   Further, for every loan made there was a note to be given secured by a mortgage of real estate.   The note and mortgage were to recite the number of shares pledged and the amount of money

advanced thereon, and were to be conditioned for the payment of the monthly dues upon the shares and the interest and premium upon the loan, together with all fines on payments in arrears until the shares reached the ultimate value of $200 each, or the loan was otherwise cancelled or discharged.   (Sec. 66.)

It is not questioned that the purpose of the organization of the defendant association, like that of similar associations in this State, was to accumulate from small contributions capital to loan to members for building purposes, the money to be advanced as the building progressed.

To enable him to build, or finish building, a house on a lot of land owned by him, the plaintiff applied to the defendant association for a loan of $2000 offering as security a mortgage of the building and land.   His application was accepted and on March 1, 1906 he subscribed for ten shares in the association and gave to it the mortgage and his note for $2000 as required by the statute and the association's by-laws.   The note and the condition in the mortgage are printed by the reporter.   It will be seen that in these the plaintiff promised to pay the association the sum of $2000 in monthly installments of $10, and interest at six per cent also in monthly installments of $10, and premiums also in monthly installments of $3, and, further, all fines incurred, until the ten shares should amount to $200 each or $2000 in all, or the $2000 loan be otherwise cancelled or discharged.

The whole of the $2000 loan was not advanced to the plaintiff at the date of his note and mortgage but only $610.50.   Other sums were advanced at various times afterward as the directors adjudged the progress of the building warranted.   Before the full amount of the $2000 had been thus advanced, he applied for an increase of the loan to $3000 which was granted.   He thereupon subscribed for five more shares making fifteen in all, and gave July 11, 1906, a new note and mortgage for $3000 of the same tenor as the first except that the monthly dues on shares were $15, the monthly installments of interest were $15 and the monthly premiums were $4.50. The old note and mortgage were cancelled, the new ones taking their places.   The association continued the advancement of money

to the plaintiff on the loan as before up to the 24th day of July, when all the advances from the beginning, March 1, amounted to $2858.96, the total amount advanced.

The plaintiff failed to pay the stipulated monthly payments and fines, and the association on July 6, 1907 effected a forfeiture of the fifteen shares of the plaintiff and on July 11 began proceedings for foreclosing the mortgage. In October following, the plaintiff, desiring to redeem his house and land from the mortgage, asked for an account of the amount due thereon. The association by the account rendered claimed $3241.65 to be due. The plaintiff paid the sum and his mortgage was cancelled. He now claims that sundry items of debit to him in the account were unauthorized by the law and the contract, and he has brought this suit to recover back the amount of those items. The case was tried by the Superior Court without a jury and various findings and rulings were made by that court to several of which exceptions were taken by one or the other party. It is not necessary to consider the numerous exceptions seriatim since but few questions of law are involved, and their solution will determine the case and the fate of the exceptions.

1. The principal question is as to the computation of interest and premiums. The plaintiff contends that he should pay interest and premiums only on the sums actually advanced him and reckoned on each only from the date of the advancement. The defendant contends that they are to be computed on the face of the notes and from their date. The plaintiff argues that the notes and mortgages, whatever their tenor, were, as to the loan, only security for the re-payment of such sums as he actually received with interest and premiums on each such sum from the time he received it.

If the relation between the parties were simply that of borrower and lender of money, it might be readily, and perhaps conclusively, inferred that such was the intention, and in such case the lender could only have interest on what he actually advanced and from the time he advanced it. In this case, however, there were between the parties other relations and rights and duties. The plaintiff voluntarily became a borrowing member of the defendant association and thereby bound himself to make to it all the payments

required of a borrowing member by its by-laws and the statute. In return he became entitled to have similar payments made by all other borrowing members. It was these payments by all the members that created the capital from which loans were made to members, and the income from which the necessary expenses were paid. If, on the one hand the payments required of him were more than the interest on the sums he received from the time he received them, on the other hand he had the benefit of similar payments by the other members. His share of the accruing profits was credited to him.

His note and mortgage were security, not merely for the repayment of money advanced with interest from the time of each advancement, but for the contract expressed in them, a contract permitted if not required, by the by-laws and the statute. In consideration of being received as a borrowing member entitled to the benefits of such membership, as well as in consideration of the association's duty to advance to him money as needed and as the security warranted up to the amount specified, he contracted, not simply to repay what money he received with interest, but to pay certain fixed, specified sums each month, until the payments plus his share of the earnings of the association should amount to $200 for each of his shares in the association, or the loan applied for and voted to him should be otherwise cancelled or discharged. It is true the association did not set apart in its vaults, nor specially deposit in some bank, the whole amount of money voted as a loan to the plaintiff, but kept all its unemployed money in one deposit in a bank on interest. The association was bound, however, to have the money instantly available to advance to the plaintiff as fast as he became entitled to it. He shared in the profits from the deposit in the bank. In this respect the transaction was much like that where a bank stockholder discounts his note at the bank and leaves a part of the proceeds there on deposit. He pays the full discount on the face of his note for the time it is to run though he takes away a much less amount. As a stockholder he gets his share of the bank's profits on his deposit.

But the plaintiff further contends that if the contract were as

claimed by the defendant, it was illegal, and he cites sec. 64 and sec. 65 of the statute. Sec. 64 enacts that "Premiums for loans shall consist of a percentage charged on the amount lent in addition to the interest." Sec. 65 enacts that the monthly interest on the "loan" shall not be at an annual rate of more than six per cent." The argument is that the words "loan" and "lent," in the sections cited, mean the sum or sums actually drawn out; but, reading the words in connection with the rest of the statute and in the light of its undisputed purpose, they rather appear to mean the whole sum contracted for between the parties. It was one "loan" and one sum "lent," though the money be advanced only in installments. The defendant's contention must be sustained.

2. The plaintiff also contends that, upon the defendant's theory, his second mortgage and note were only security for further payments of dues, premiums, interest and fines, and, though he might still owe the unpaid installments secured by the first mortgage, it is an unsecured indebtedness and cannot be included in the amount to be paid to redeem from the second mortgage. It was, however, very clearly the understanding of the parties that the new note and mortgage were to be a continuing security for the original contract. A change in the security does not cancel the contract. The second note and mortgage were intended, and operated, to be security for all previous overdue installments of dues, interest and premiums, and these were properly charged in the account.

3. The plaintiff again complains that there was an incorrect computation of the amount of fines to be paid to redeem. Sec. 68 of the statute enacts that "no fines shall be charged after six months from the first lapse." The first note was given March 1, and the plaintiff failed to pay the March and subsequent installments down to the time of the forfeiture of his shares, July 6, 1907. He claims that under the statute no fines could be charged after September, 1906, six months from his first lapse. But on July 11, 1906 he made a new promise with a new mortgage to pay installments and his first lapse under this new note and mortgage was in August, 1906. The defendant in making up the account under the mortgage did not charge any fines from March to August but did charge fines

for the six months from August, the time of the first lapse under the new mortgage and not afterward. The charge made was authorized.

4. The plaintiff continued in arrears for dues, interest, premiums and fines for more than six months from the date of his second, or $3000 note, and upon due proceedings his shares became forfeited to the association July 6, 1907, nearly a year afterward. By section 69 of the statute an account was then to be stated. The plaintiff was to be debited with arrears of premiums, interest and fines to that date, July 6, 1907, and of course with the sums advanced to him. On the other hand he was to be credited with the withdrawal value of his shares at that date. The balance of the account thus stated was to be enforced against the mortgaged property.

It is in controversy whether this balance becomes a new principal to bear interest from its date until paid or whether the interest from that date is to be computed only on the amount of the sums advanced. By the forfeiture of his shares the plaintiff ceased to be a member of the association and became simply its mortgage debtor for the balance found due at the date of the forfeiture upon the account stated according to the statute. The various items on either side of the account were merged in that balance and the plaintiff became indebted for the whole balance and should pay interest on the whole. There is no provision in the statute or contract for dividing it.

The foregoing practically disposes of all the questions finally in controversy, the parties having mutually conceded some other claims made at first. The result is that the exceptions by the plaintiff must be overruled, but the court below having ruled that interest after the forfeiture was not to be computed on the whole balance but only upon the sum advanced, the defendant's exception to that ruling must be sustained. Upon the whole record, the judgment below should be for the defendant.

*Plaintiff's exceptions overruled.*
*Defendant's exceptions sustained.*
*Judgment for defendant ordered.*